

FILED & ENTERED

JAN 11 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:      Phachira Ketkaew, Debtor. | Case No.:     2:19-bk-15098-ER<br>Adv. No.:     2:19-ap-01252-ER |
| Peera Jittanoon and Preda Jittanoon,<br><br>Plaintiffs,<br><br>v.<br><br>Phachira Ketkaew,<br><br>Defendant. | **MEMORANDUM OF DECISION FINDING THAT PLAINTIFFS ARE ENTITLED TO THE ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT**<br><br>[No hearing required pursuant to Federal Rule of Civil Procedure 78(b) and Local Bankruptcy Rule 9013-1(j)(3)] |

## I. Introduction

On September 23, 2020, the Court struck the Answer filed by Phachira Ketkaew ("Defendant") and entered Defendant's default.[1] Entry of default was based upon Defendant's representation to counsel for Peera Jittanoon and Preda Jittanoon ("Plaintiffs") that she no longer intended to contest the action, that she would not respond to discovery or appear for a deposition, and that Plaintiffs should proceed to take her default.[2] Having reviewed Plaintiffs' *Motion for Default Judgment* (the "Motion")[3] and the evidence submitted in support thereof, the Court finds that Plaintiffs are entitled to entry of default judgment against Defendant. Specifically, the Court

---

[1] *See* Doc. No. 39 (Order Striking Defendant's Answer and Entering Defendant's Default) and Doc. No. 38 (Ruling Striking Defendant's Answer and Entering Defendant's Default).

[2] *See* Doc. No. 38 at 2.

[3] *See* Doc. Nos. 41–43.

will enter judgment finding that Defendant is indebted to Plaintiffs in the amount of $148,400 (consisting of actual damages of $74,200 and punitive damages of $74,200), and that such indebtedness is excepted from Defendant's discharge pursuant to § 523(a)(2)(A), (a)(4), and (a)(6).

## II. Findings and Conclusions

### A. Facts Established by the Entry of Default

Once default has been entered, the well-pleaded factual allegations of the complaint are taken as true. *Cripps v. Life Ins. Co. of North America*, 980 F.2d 1261, 1267 (9th Cir.1992). Through the Complaint and the evidence submitted in support of the Motion, Plaintiffs has established the following facts:

1) Plaintiffs met Defendant through their parents, Somkiat and Sommanus Jittanoon. At the time, Defendant was the wife of Plaintiffs' father's friend.

2) In 2017, Defendant wanted to purchase a Thai restaurant but lacked the funds to do so. Plaintiffs' parents agreed to invest in the restaurant on behalf of Plaintiffs, subject to Plaintiffs each owning a 25% membership interest (totaling 50% between the two Plaintiffs), and Defendant owning a 50% membership interest. Pursuant to these terms, Plaintiffs' parents invested on behalf of Plaintiffs $45,000 to purchase a restaurant and $5,000 for initial operating expenses, for a total investment of $50,000. Defendant was to be the cook and Plaintiffs were to run the front of the restaurant.

3) In January 2018, Plaintiffs and Defendant formed a limited liability corporation, entitled Phachira and Peera Preda LLC (the "LLC"), for the purpose of owning and operating the Thai restaurant under the fictitious name Ya Yaa Thai. The LLC was registered with the California Secretary of State on January 24, 2018. Plaintiffs and Defendant orally agreed that each Plaintiff would own a 25% membership interest, and that Defendant would own a 50% membership interest in the LLC. No operating agreement was prepared or executed. All three members of the LLC—Defendant, and each Plaintiff—have served as managers of the LLC. Neither Plaintiff ever received distributions from the LLC.

4) In early 2018, the parties purchased a Thai restaurant that was already in business, located at 1130 Redondo Beach Boulevard, Gardena, California 90247 (the "Restaurant"). The parties entered into a sublease with the previous owner. In contravention of the parties' agreement, Defendant executed the sublease in her individual capacity, instead of on behalf of the LLC.

5) Between May 2018 and January 2019, Plaintiffs advanced $23,000 to pay rent for the Restaurant. During that same period, Plaintiffs advanced in excess of $1,200 for groceries for the Restaurant.

6) On February 2, 2019, Plaintiffs arrived for work at the Restaurant, but no one was there. Plaintiffs spoke with the cook, who told them that the Restaurant was closed for the time being. On February 5, 2019, the property owner threatened to evict the Restaurant if it did not remain open. On that same date, Plaintiffs discovered that Defendant had withdrawn $500 from the LLC's bank account without authorization.

7) On February 8, 2019, following pressure from the landlord, Defendant reopened the Restaurant. Defendant only accepted cash payments and did not deposit any of the cash received into the LLC's bank account.

8) On February 9, 2019, Plaintiffs met with Defendant. Defendant informed Plaintiffs that the Restaurant was closed and that she had changed the locks. Defendant told Plaintiffs that she no longer wanted them to be part of the business. Defendant did not offer to buy out Plaintiffs' 50% membership interest in the LLC. Subsequent to February 9, 2019, Defendant did not distribute any of the Restaurant's profits to Plaintiffs.

9) Subsequent to February 9, 2019, Defendant (a) transferred all funds out of the LLC's bank account, closed the bank account, and opened a new bank account to which Plaintiffs have no access; (b) cancelled the LLC's insurance policies; (c) allowed the LLC's workers' compensation policy to be cancelled for non-payment; (d) subjected the LLC to an audit fee by failing to provide documents requested by the workers' compensation insurance policy issuers; and (e) deprived Plaintiffs of their membership interest in the LLC.

10) Plaintiffs would not have agreed to invest in the LLC with Defendant had they known that Defendant would shut Plaintiffs out of the business and fail to distribute any of the LLC's profits to Plaintiffs.

## B. Plaintiffs Are Entitled to Default Judgment on the First Claim for Relief Under § 523(a)(2)(A)

Section 523(a)(2)(A) provides: "A discharge under section 727 … of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To except debts from discharge, a creditor has the burden of proof under the preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654 (1991).

To prevail on a § 523(a)(2)(A) claim on the grounds of false pretenses or false representation, a creditor must prove that:

(1) the debtor made the representations;
(2) that at the time he knew they were false;
(3) that he made them with the intention and purpose of deceiving the creditor;
(4) that the creditor relied on such representations; and
(5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

*Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010).

Plaintiffs have satisfied all the elements of § 523(a)(2)(A). At the time Plaintiffs and Defendant formed the LLC, Defendant represented to Plaintiffs that Plaintiffs would each have a 25% interest in the LLC. Defendant's representation was false, since at the time Defendant made the representation Defendant intended to divest Plaintiffs of their interest in the LLC and misappropriate the LLC's profits for herself. The representation was made for the purpose of deceiving Plaintiffs, in furtherance of Defendant's scheme to induce Plaintiffs to invest in the LLC and then seize control of all the LLC's assets. The fraudulent nature of Defendant's representation is established by the fact that Defendant seized the LLC and locked Plaintiffs out shortly after business operations had commenced. *See McCrary v. Barrack (In re Barrack)*, 217 B.R. 598, 607 (B.A.P. 9th Cir. 1998) (internal citations omitted) ("'Fraudulent intent may be

established by circumstantial evidence, or by inferences drawn from a course of conduct.' Therefore, in determining whether the debtor had no intention to perform, a court may look to all the surrounding facts and circumstances."). Defendant's false representation caused Plaintiffs to lose their investment in the LLC, as Plaintiffs would not have invested in the LLC had they known that their investment would be expropriated.

**C. Plaintiffs Are Entitled to Default Judgment on the Second Claim for Relief Under § 523(a)(4) on the Ground of Embezzlement, but Are Not Entitled to Default Judgment Under § 523(a)(4) on the Ground of Fraud or Defalcation**

Section 523(a)(4) excepts from discharge debts incurred "for … embezzlement." For purposes of § 523(a)(4), embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *First Delaware Life Ins. Co. v. Wada (In re Wada)*, 210 B.R. 572, 576 (9th Cir. BAP 1997). "In the context of non-dischargeability, embezzlement requires three elements: (1) property rightfully in the possession of a nonowner, (2) nonowner's appropriation of the property to a use other than which it was entrusted, and (3) circumstances indicating fraud." *Id.*

Plaintiffs are entitled to default judgment on their § 523(a)(4) embezzlement claim. Pursuant to the parties' agreement, Defendant was rightfully in possession of Plaintiffs' investment in the LLC. Defendant misappropriated the funds Plaintiffs had invested by taking control of the LLC and locking Plaintiffs out of the business. The circumstances surrounding Defendant's seizure of the LLC indicate fraud—for example, Defendant transferred all funds out of the LLC's bank account, closed the bank account, and opened a new bank account to which Plaintiffs have no access.

Plaintiffs also seek default judgment against Defendant under § 523(a)(4) for "fraud or defalcation while acting in a fiduciary capacity." Plaintiffs are not entitled to default judgment for fraud or defalcation because they have not established that Defendant was acting in a fiduciary capacity when she committed the fraud or defalcation. "To prevail on a non-dischargeability claim under § 523(a)(4) the plaintiff must prove not only the debtor's fraud or defalcation, but also that the debtor was acting in a fiduciary capacity when the debtor committed the fraud or defalcation." *Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373, 378 (B.A.P. 9th Cir. 2011).

Federal bankruptcy law determines whether a fiduciary relationship exists within the meaning of §523(a)(4). *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1125 (9th Cir. 2003). For purposes of §523(a)(4), the fiduciary relationship "must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir. 1996). "Because the broad general definition of fiduciary—a relationship involving confidence, trust, and good faith—is inapplicable in the dischargeability context, ordinary commercial relationships are excluded from the reach of section 523(a)(4)." *Lewis v. Short (In re Short)*, 818 F.2d 693, 695 (9th Cir. 1987).

Here, the agreement between Plaintiffs and Defendant to establish the LLC was an ordinary commercial relationship. Plaintiffs have not shown the existence of an express or technical trust predating the agreement to create the LLC. Therefore, Defendant was not acting in a fiduciary capacity for purposes of § 523(a)(4) when she misappropriated the LLC's assets. Plaintiffs are not entitled to default judgment against Defendant under § 523(a)(4) on the ground of fraud or defalcation.

**D. Plaintiffs Are Entitled to Default Judgment on the Third Claim for Relief Under § 523(a)(6)**

"Section 523(a)(6) excepts from discharge debts arising from a debtor's 'willful and malicious' injury to another person or to the property of another. The 'willful' and "malicious' requirements are conjunctive and subject to separate analysis." *Plyam v. Precision Development, LLC (In re Plyam)*, 530 B.R. 456, 463 (9th Cir. B.A.P. 2015) (internal citations omitted).

An injury is "willful" when "a debtor harbors 'either subjective intent to harm, or a subjective belief that harm is substantially certain.' The injury must be deliberate or intentional, 'not merely a deliberate or intentional act that leads to injury.'" *Id.* at 463 (internal citations omitted). An injury is "malicious" if it "involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146–47 (9th Cir. 2002) (internal citations omitted).

In addition, the injury-producing conduct must be tortious in order to be excepted from discharge under §523(a)(6). *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008). "[C]onduct is not tortious under § 523(a)(6) simply because injury is intended or 'substantially likely to occur,' but rather is only tortious if it constitutes a tort under state law." *Id.* at 1041.

Plaintiffs are entitled to default judgment against Defendant under § 523(a)(6). Defendant acted willfully in seizing the LLC's assets and retaining its profits. In taking such actions, Defendant either had a subjective intent to harm Plaintiffs, or held a subjective belief that harm to Plaintiffs was substantially certain. The Court notes that in evaluating Defendant's state of mind, Defendant "is charged with the knowledge of the natural consequences of [her] actions." *Ormsby v. First Am. Title Co. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010); *see also Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146 n.6 (9th Cir. 2002) ("In addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action."). Here, Defendant's knowledge of the natural consequences of her actions shows that she acted willfully for purposes of § 523(a)(6).

Defendant's actions were also malicious. Seizure of the LLC's assets was wrongful, intentional, caused injury to the Plaintiffs, and was done without just cause or excuse. Finally, the conversion of the LLC's assets was tortious under California law.

**E. Plaintiffs Are Entitled to Actual Damages in the Amount of $74,200**

Plaintiffs are entitled to actual damages in the amount of $74,200. Plaintiffs' initial investment was $50,000. Between May 2018 and January 2019, Plaintiffs spent $23,000 to pay rent for the Restaurant. Plaintiffs also spent at least $1,200 on supplies. Plaintiffs did not receive any profits generated by the Restaurant and lost their entire investment as a result of Defendant's conduct.

**F. Plaintiffs Are Entitled to Punitive Damages in the Amount of $74,200**

Cal. Civil Code § 3294 provides in relevant part:

(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant….

(c) As used in this section, the following definitions shall apply:
(1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.
(2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.
(3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

A plaintiff may not recover punitive damages solely for a breach of contract. *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1308–09 (S.D. Cal. 2003). However, if a breach of contract is accompanied by tortious conduct, punitive damages are recoverable. *Consol. Data Terminals v. Applied Digital Data Sys., Inc.*, 708 F.2d 385, 399 (9th Cir. 1983). Here, Plaintiffs are entitled to punitive damages because Defendant's breach of contract was tortious, given that Defendant embezzled Plaintiffs' investment and made fraudulent representations to induce Plaintiffs to enter into the venture. In addition, Defendant's conduct in seizing the LLC's assets involved oppression, fraud, and malice within the meaning of Cal. Civ. Code § 3294.

"The three criteria for determining the amount of punitive damages that should be awarded are: (1) the reprehensibility of the defendant's actions; (2) the amount of compensatory damages, although there is no fixed ratio for determining whether punitive damages are reasonable in relation to actual damages, and (3) the defendant's financial condition—the wealthier the wrongdoer, the larger the punitive damage award must be to meet the goals of punishment and deterrence." *Leonard v. Guillory (In re Guillory)*, 285 B.R. 307, 316 (Bankr. C.D. Cal. 2002).

Punitive damages are limited by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 412 (2003). In determining whether punitive damages are consistent with due process, the Court must consider "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* at 418. "[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Id.* at 419. "[I]n practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id.* at 425.

The Court finds that the facts of this case support an award of punitive damages equal to the amount of compensatory damages awarded—that is, punitive damages of $74,200. Defendant's conduct was reprehensible. Defendant induced Plaintiffs to invest significant funds in the LLC, all the while intending to seize Plaintiffs' investment for herself. As a result of Defendant's conduct, Plaintiffs have been deprived of their entire investment, and Defendant has effectively become the owner of the Restaurant.

A ratio of punitive to compensatory damages in excess of 1:1 is not warranted because of Defendant's financial condition. Plaintiffs have not presented any evidence of Defendant's wealth. However, the Court takes judicial notice of Defendant's bankruptcy schedules, which indicate that in the two months prior to the filing of the petition, Defendant's sole source of income was operation of the Restaurant, which sustained a monthly loss of $2,740. Since it

appears that Defendant's income is minimal to non-existent, a punitive damages award equal to the compensatory damages award is sufficient to satisfy the objectives of punishment and deterrence. The Court further notes that on similar facts, the court in *In re Guillory* adopted a similar multiplier. The *Guillory* court awarded $15,000 in punitive damages to a plaintiff who suffered $9,000 in actual damages from the defendant's conversion of the plaintiff's pickup truck (a multiplier of 1.67). *Guillory*, 285 B.R. at 315–17.

## III. Conclusion

Based upon the foregoing, the Court finds that Plaintiffs are entitled to the entry of default judgment against Defendant, and are entitled to an award of compensatory damages in the amount of $74,200 and punitive damages in the amount of $74,200. The Court will enter default judgment consistent with this Memorandum of Decision.

###

Date: January 11, 2021

Ernest M. Robles
United States Bankruptcy Judge